HEARN DEPARTMENT STORES, INC., Appellant-Respondent, v. DAVID LIVINGSTON et al., Individually and as Officers of Department Store Employees Local Union No. 1250 (Ind.), et al., Respondents-Appellants.

HEARN DEPARTMENT STORES, INC., Appellant-Respondent, v. DAVID LIVINGSTON et al., Individually and as Officers of Department Store Employees Local Union No. 1250 (Ind.), et al., Respondents-Appellants.

First Department, October 6, 1953.

*Selig J. Levitan* of counsel (*Mae T. Korn* with him on the brief; *Javits, Levitan & Held,* attorneys), for appellant-respondent.

*Milton C. Weisman* of counsel (*Irving Rozen, Isadore Katz* and *David Jaffe* with him on the brief; *Weisman, Allan, Spett & Sheinberg,* attorneys), for respondents-appellants.

*Herman A. Gray,* counsel to the New York State CIO Council, *amicus curiæ,* in support of respondents-appellants.

*Herman E. Cooper* of counsel (*H. Howard Ostrin* and *Eugene N. Sosnoff* with him on the brief; *Herman E. Cooper,* attorney), for New York City CIO Council, *amicus curiæ,* in support of respondents-appellants.

*Leonard Rovins,* attorney for National Retail Dry Goods Association, *amicus curiæ,* in support of appellant-respondent.

*Per Curiam.* The Special Term has found after a hearing that a labor dispute within the purview of section 876-a of the Civil Practice Act is involved. The court stated that in view of the fact that it was not possible to identify the employees allegedly involved in illegal activities it could not then decide whether employees of plaintiff who had engaged in a sit-down strike on May 13, 1953, were mere strangers or whether they still retained their status as employees.

Relief against mass picketing which plaintiff sought *pendente lite,* was partially granted. Finding that the picketing was accompanied by acts of violence, undue noise, shouting, booing, catcalling, chanting in unison and interfering with persons desiring to patronize plaintiff's stores, the court enjoined any violence and abuses with respect to picketing and limited the number of pickets to 200 at plaintiff's 14th Street store and to 50 at plaintiff's Bronx store during certain hours of the day or with picketing by not more than 15 persons at each entrance of plaintiff's stores, and 6 pickets at plaintiff's warehouse in Brooklyn.

Plaintiff claims that no labor dispute is involved because, as it alleges: defendant union no longer represents any of its employees; members of defendant union were properly discharged by plaintiff for misconduct in engaging in a sit-down strike and in seizure of plaintiff's premises, and are consequently no longer employees but strangers; that in the circumstances the picketing is by strangers to compel recognition of defendant union; such picketing at best, where it is not for a lawful labor objective, is proscribed as violative of section 17 of article I of the Constitution of the State of New York and section 7 of the Federal Labor Management Relations Act of 1947. (U. S. Code, tit. 29, § 157; *Goodwins, Inc.,* v. *Hagedorn,* 303 N. Y. 300.)

Concededly, plaintiff engaged in interstate commerce. Accordingly, the National Labor Relations Board has exclusive jurisdiction to act in the dispute to determine who would be a proper bargaining agent between employer and employee.

The question as to whether there is in fact a labor dispute under section 876-a of the Civil Practice Act should await determination at a plenary trial, which should be had without delay, at which there may be a full adducement of all pertinent evidence, including proof of what has intervened since the entry of the order appealed from.

However, irrespective of whether there is involved a labor dispute, where, as here, members of the defendant unions under

the direction of their representatives and agents have engaged in a sit-down strike, have seized the property of plaintiff and in the course of such seizure have committed unlawful acts, such conduct is in clear violation of the laws of this State. (*Labor Bd.* v. *Fansteel Corp.*, 306 U. S. 240.) Neither the freedom of speech clause nor any other provision of the United States Constitution can immunize any person, including defendants, from obedience to State law. The United States Supreme Court has held that restraint of picketing is fully justified for the purpose of preventing violation of State law. (See *Giboney* v. *Empire Stor. Co.*, 336 U. S. 490, and *Building Service Union* v. *Gazzam*, 339 U. S. 532.) Though the right of unions and employees to strike or to picket, in a proper case, is fully vouchsafed to labor, this guaranty to employees' rights cannot, however, be made a shield for violence, disorder and crime. The power of this court to enjoin violence in a " labor dispute " is beyond question, and when necessary, this power may even authorize prohibition of all picketing (*Baillis* v. *Fuchs*, 283 N. Y. 133, 138; *Busch Jewelry Co.* v. *United Retail Employees' Union*, 281 N. Y. 150, 155; *Florsheim Shoe Store Co.* v. *Shoe Salesmen's Union*, 288 N. Y. 188, 201; *Art Steel Co.* v. *Velazquez*, 280 App. Div. 76). " Even if the end sought is lawful, the means used must be also. ' Picketing ' connotes no evil. It may not be accompanied, however, by violence, trespass, threats or intimidation express or implied." (*Exchange Bakery & Restaurant* v. *Rifkin*, 245 N. Y. 260, 263.) In *Drivers Union* v. *Meadowmoor Co.* (312 U. S. 287, 294, 295) decided in 1941, the United States Supreme Court, per FRANKFURTER, J., made the following pertinent observation: " Nor can we say * * * that a state through its courts cannot base protection against future coercion on an inference of the continuing threat of past misconduct ".

Upon an examination of this record, we find that on May 12, 1953, a representative of defendant unions made the following threat to plaintiff: " We are through negotiating with you. We will never negotiate with Hearns again. You will come crawling and cringing on your knees and you will beg forgiveness of every employee in this store. We will tear your building apart brick by brick. We will tear your merchandise apart piece by piece "; that on the evening of May 12, 1953, defendant unions called a meeting of their members at which they instructed employees of plaintiff to report to their place of employment on May 13th, but to do no work; that on May 13, 1953, defendant unions and its members who were then present engaged in a sit-down strike;

refused to leave when ordered to do so; took possession of plaintiff's premises and business at 14th Street and 5th Avenue, in the borough of Manhattan, and in The Bronx, at 149th Street and 3rd Avenue; prevented executives from serving customers or reaching the cash registers; seized the telephone switchboards, intimidated customers; and prevented plaintiff from conducting practically any of its business on the day in question; that the sit-down strike continued until enjoined later in the afternoon by an order of the Supreme Court; that on May 14, 1953, these employees went back to work for two or three hours and then left the premises and went out on strike pursuant to a determination to do so made at a union meeting the night before.

The sit-down strike was not a spontaneous outburst of violence manifesting the strong emotions that sometimes mark the beginning of a strike. Rather, it was carefully plotted by the union leaders and approved by most of the employee members as an illegal act calculated to deal the plaintiff a knockout blow at the very outset of the strike.

We also find that on May 14, 1953, and thereafter defendant unions and its members engaged in mass picketing in front of the stores of plaintiff at 14th Street and in The Bronx, which picketing was accompanied by acts of violence, undue noise, shouting, booing, catcalling, chanting in unison and unlawful interference with persons desiring to patronize plaintiff's stores; that on May 14, 1953, five employees of a concessionaire of Hearn's Department Store at 14th Street and 5th Avenue were threatened and attacked by representatives of defendant unions; that there were other and later acts of violence and intimidation, including the stoning of plaintiff's executives.

For the foregoing reasons and especially because of the conduct of defendant unions, and its members who took part in the sit-down strike of May 13, 1953, we reach the conclusion that plaintiff is entitled to injunctive relief *pendente lite* against all picketing.

Insofar as the order appealed from denies the application to enjoin all picketing *pendente lite* it is reversed. Decretal paragraphs Nos. 1 and 4 are reversed and paragraph No. 3 is modified so as to restrain all picketing. The order insofar as it denies defendants' motions to dismiss plaintiff's complaint in action No. 1 and plaintiff's amended complaint in action No. 2 for insufficiency is affirmed.

Our determination is based upon facts established by testimony at the hearings before the Special Term and without consideration of affidavits there submitted. The court at the

plenary trial is to determine all issues raised by the pleadings on the basis of the evidence adduced before it, including relevant matters which have occurred since the order appealed from was made. If the facts adduced warrant conclusions other than those reached on the basis of this record, the court is free to grant a decree in accordance with the facts thus ascertained.

As the National Labor Relations Board has exclusive jurisdiction to determine the proper bargaining agent, to be decided by an election at which only those entitled to vote shall be permitted to do so, we think it desirable that the parties petition the National Labor Relations Board to hold such an election. All we determine on this preliminary motion is that the facts established clearly indicate that as of the date of the entry of the order appealed from there had occurred acts of violence warranting a direction that *pendente lite* all picketing is prohibited. Whether this is to be continued by permanent injunction will depend entirely upon the evidence at the plenary trial.

Defendants are to serve their answer to the amended complaint within three days after the entry of the order herein, and plaintiff is to notice the case for trial immediately thereafter. The trial is to proceed without unnecessary delay at Special Term, Part III of the Supreme Court.

The motion to permit this court to take into account upon the argument of these appeals supervening facts which have occurred after the entry of order appealed from is denied in view of the immediate plenary trial at which whatever facts have occurred since the entry of that order may be submitted by either side and there considered at the trial.

The order appealed from should be modified in accordance with this opinion and as so modified affirmed. Settle order upon two days' notice.

GLENNON, J. P., DORE, COHN, CALLAHAN and BOTEIN, JJ., concur.

Order unanimously modified in accordance with the opinion herein and, as so modified, affirmed. Settle order on two days' notice. [See *post,* p. 874.]